**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Orlando Division**

| | | |
|---|---|---|
| **VERONICA WHITAKER,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Case No.:** |
| | ) | |
| **WINTER GARDEN PROPCO, LLC,** | ) | |
| **WINTER GARDEN OPCO, LLC,** | ) | |
| **WINTER GARDEN PHASE I OPCO, LLC,** | ) | |
| **WINTER GARDEN PHASE I PROPCO, LLC,** | ) | |
| **WINTER GARDEN PHASE II PROPCO, LLC,** | ) | |
| **WINTER GARDEN PHASE II OPCO, LLC,** | ) | |
| **WINTER GARDEN HOLDCO, LLC,** | ) | |
| **ROSECASTLE MANAGEMENT, LLC,** | ) | |
| **ROSECASTLE HOLDINGS, LLC, and** | ) | |
| **ALG SENIOR, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____/

**COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, DAMAGES AND DEMAND FOR JURY TRIAL**

**COMES NOW** Plaintiff, Veronica Whitaker ("Plaintiff Whitaker"), by and through

counsel, Disability Rights of Florida, Inc. and Neil Henrichsen, Henrichsen Law Group, PLLC,,

and files this Complaint against the Defendants, Winter Garden Propco, LLC, Winter Garden

Opco, LLC, Winter Garden Phase I Propco, LLC, Winter Garden Phase I Opco, LLC, Winter

Garden Phase II Propco, LLC, Winter Garden Phase II Opco, LLC, Winter Garden Holdco, LLC,

ALG Senior, LLC, Rosecastle Holdings, LLC, and Rosecastle Management, LLC, (collectively

"Defendants") seeking an award of monetary damages and declaratory and injunctive relief

against all Defendants, jointly and severally, as relief for their prohibited and unlawful conduct described in detail herein that violated and continues to violate her civil rights to not be discriminated against on account of her disabilities which rights are afforded to her by the Fair Housing Amendments Act, 42 U.S.C. §§ 3601 - 3619 ("Fair Housing Act" or "FHA").

## JURISDICTION AND VENUE

1. This is an action for injunctive relief and for monetary damages against Winter Garden Propco, LLC (PROPCO), Winter Garden Opco, LLC (OPCO), Winter Garden Phase I Propco, LLC (PROPCO PHASE I), Winter Garden Phase I Opco, LLC (OPCO PHASE I), Winter Garden Phase II Propco, LLC (PROPCO PHASE II), Winter Garden Phase II, Opco LLC (OPCO PHASE II), Winter Garden Holdco, LLC (HOLDCO), Rosecastle Management, LLC (ROSECASTLE MANAGEMENT), Rosecastle Holdings, LLC (ROSECASTLE HOLDINGS), and ALG Senior, LLC (ALG SENIOR) jointly and severally.

2. This Court has jurisdiction of this action pursuant to 42 U.S.C. §3613(a) and (c) and pursuant to 28 U.S.C. §§ 1331, 2201-2202, and 1343(a)(3) and (4).

3. Plaintiff Whitaker seeks to redress the unlawful deprivation of her right to fair housing established under the United States Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601 et. seq.

4. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because all Defendants conduct business in this District and because the unlawful conduct, acts and omissions described herein and that give rise to Plaintiff Whitaker's action against Defendants occurred in this District.

**PARTIES**

5.  Plaintiff Whitaker is a 75-year-old woman with disabilities[1] as that term is defined by the federal Fair Housing Amendments Act (FHA).

6.  Plaintiff Whitaker has physical impairments including paraplegia which substantially limit her mobility.

7.  As a result of her physical disabilities, Plaintiff Whitaker cannot walk or bear weight on her legs and she uses a wheelchair for mobility.

8.  This is a true and correct current photograph of Plaintiff Whitaker with her wheelchair:



9.  Defendant OPCO is a foreign limited liability company organized under the laws of North Carolina.

10. Defendant OPCO is registered with the Florida Department of State, Division of Corporations with the principal address of 402 Lakeview, Road, Winter Garden, FL 34787.

11. As of 2024, Defendant OPCO's Florida authorized representative is Shana Bonner Pitts.

---

[1] The term "disability" or "disabled" is synonymous with the term "handicap" as defined in 42 U.S.C. § 3602(h). Plaintiff Whitaker uses the term "disability" or "disabled."

12. Defendant OPCO does business under the fictitious name "Golden Pond Communities" which is registered with the Florida Secretary of State.

13. As part of Golden Pond Communities, Defendant OPCO operates an assisted living facility referred to herein as "Golden Pond ALF."

14. Defendant OPCO, in a joint venture with all other named Defendants, operates the Golden Pond ALF which is located at 402 Lakeview Rd, Winter Garden, Fl 34787 as described at the Golden Pond Communities website: goldenpondflorida.com.

15. Golden Pond ALF is an assisted living facility that Defendant OPCO operates under the laws of the State of Florida and the Assisted Living Facility license number 9626 issued to Defendant OPCO in 2017 by Florida's Agency for Health Care Administration.

16. David Hopkins was the executive director of the Golden Pond ALF from approximately April 2022 until January 2023.

17. Defendant OPCO operates and manages Golden Pond ALF as a joint venture enterprise with all of the other named Defendants, PROPCO, OPCO, PHASE I OPCO, PHASE I PROPCO, PHASE II PROPCO, PHASE II OPCO, HOLDCO, ROSECASTLE MANAGEMENT, ROSECASTLE HOLDINGS, and ALG SENIOR.

18. Defendant PROPCO is a foreign limited liability company organized under the laws of North Carolina.

19. Defendant PROPCO is registered with the Florida Department of State, Division of Corporations with the principal address of 402 Lakeview, Road, Winter Garden, FL 34787. This is the same as the address of the Golden Pond ALF.

20. As of 2024, Defendant PROPCO's Florida authorized representative is the same Shana Bonner Pitts that is the authorized representative of Defendant OPCO.

21. Defendant PROPCO also owns the property at 404 Lakeview Road, Winter Garden, Florida 34787, which, per the Orange County property appraiser at https://ocpaweb.ocpafl.org/advancedsearch parcel ID 22-22-27-0000-00-010, is where the Golden Pond ALF is actually located.

22. Defendant PHASE I OPCO is a Florida limited liability company with the principal address of 402 Lakeview Road, Winter Garden, FL 34787, the same address for Defendants OPCO and PROPCO.

23. As of 2024, Defendant PHASE I OPCO's Florida authorized representative is the same Shana Bonner Pitts who is the authorized representative for Defendants OPCO and PROPCO.

24. Defendant PHASE I PROPCO is a Florida limited liability company with the principal address of 402 Lakeview, Rd, Winter Garden, FL 34787, the very same address for Defendants OPCO, PROPCO and, PHASE I OPCO.

25. As of 2024, Defendant PHASE I PROPCO's Florida authorized representative is the same Shana Bonner Pitts who is the authorized representative for Defendants OPCO, PROPCO, and PHASE I OPCO.

26. Defendant PHASE II OPCO is a Florida limited liability company and shares the principal address of 402 Lakeview Road, Winter Garden, FL 34787 with Defendants OPCO, PROPCO, PHASE I OPCO, and PHASE I PROPCO.

27. As of 2024, Defendant PHASE II OPCO's Florida authorized representative is the same Shana Bonner Pitts who is the authorized representative for Defendants OPCO, PROPCO, PHASE I OPCO and PHASE I PROPCO.

28. Defendant PHASE II PROPCO is a is a foreign limited liability company organized under the laws of North Carolina.

29. Defendant PHASE II PROPCO is registered with the Florida Department of State, Division of Corporations and shares the principal address of 402 Lakeview Road, Winter Garden, FL 34787 with Defendants OPCO, PROPCO, PHASE I OPCO, PHASE I PROPCO, and PHASE II OPCO.

30. As of 2024, Defendant PHASE II PROPCO's Florida authorized representative is the same Shana Bonner Pitts who is the authorized representative for Defendants OPCO, PROPCO, PHASE I OPCO, PHASE I PROPCO, and PHASE II OPCO.

31. Defendant HOLDCO is a foreign limited liability company organized under the laws of North Carolina.

32. Defendant HOLDCO is registered with the Florida Department of State, Division of Corporations and shares the principal address of 402 Lakeview Road, Winter Garden, FL 34787 with Defendants OPCO, PROPCO, PHASE I OPCO, PHASE I PROPCO, PHASE II OPCO, and PHASE II PROPCO.

33. As of 2024, Defendant HOLDCO's Florida authorized representative is the same Shana Bonner Pitts who is the authorized representative for Defendants OPCO, PROPCO, PHASE I OPCO, PHASE I PROPCO, PHASE II OPCO and PHASE II PROPCO.

34. Per the information online at the Florida Agency for Health Care Administration, Defendant HOLDCO has a 100% ownership interest in Defendant OPCO, the Defendant holding the license issued by the Agency for Health Care Administration to operate Golden Pond ALF.

35. Per the Florida Agency for Health Care Administration online records, Charles E. Trefzger has a controlling interest in and is a "Board Member/Officer" of Defendant OPCO.

36. Charles E. Trefzger is also the President and CEO of Defendant ALG SENIOR.

37. Charles E. Trefzger is a resident of Hickory, North Carolina.

38. Defendant ROSECASTLE MANAGEMENT is a Florida limited liability company with the principal address of 400 2nd Ave, NW, Hickory, NC 28601.

39. As of 2024, Defendant ROSECASTLE MANAGEMENT's is owned by Chantal Aube, a resident of North Carolina.

40.  As of 2024, Defendant ROSECASTLE MANAGEMENT's Florida authorized representative is the same Shana Bonner Pitts who is the authorized representative for Defendants OPCO, PROPCO, PHASE I OPCO, PHASE I PROPCO, PHASE II OPCO, PHASE II PROPCO and HOLDCO.

41. Defendant ROSECASTLE HOLDINGS is a Florida limited liability company with the same principal address as Defendant ROSECASTLE MANAGEMENT which is 400 2nd Ave, NW, Hickory, NC 28601.

42. As of 2024, Defendant ROSECASTLE HOLDING's identifies as its Florida authorized representative the same Shana Bonner Pitts who is the authorized representative for Defendants OPCO, PROPCO, PHASE I OPCO, PHASE I PROPCO, PHASE II OPCO, PHASE II PROPCO, HOLDCO and ROSECASTLE MANAGEMENT.

43. Defendant ROSECASTLE HOLDINGS has, per the online information provided by the Agency for Health Care Administration, a 100% ownership interest in Defendant ROSECASTLE MANAGEMENT.

44. Defendant ALG SENIOR is a foreign limited liability company organized under the laws of North Carolina.

45. Defendant ALG SENIOR was last registered as a foreign limited liability company with the Florida Department of State, Division of Corporations in 2022.

46. As of 2022, ALG SENIOR was known as "Affinity Living Group, LLC" and, per the information provided online by the Florida Secretary of State, Division of Corporations, was managed by Charles E. Trefzger who is also the current President and CEO of ALG SENIOR and, per the Agency for Health Care Administration, a Board member or officer of Defendant OPCO.

47. Defendant ALG SENIOR, along with local partners, including all named Defendants, operates ALFs throughout the nation including the Golden Pond ALF.

48. All of the named Defendants created a joint venture for the purpose of owning, operating and managing Golden Pond ALF.

49. At all times relevant to the complaint, Defendants controlled the Golden Pond ALF operations and policies and as such, each Defendant is jointly and severally liable for the harm caused to Plaintiff Whitaker by the discrimination described in this complaint.

50. At all times relevant, Defendants were each the agent, partner, joint venturer, employee and/or representative of each other and were acting within the scope of such agency, partnership, joint venture and/or employment in taking all of their actions as described in this complaint that are the proximate cause of Plaintiff Whitaker's injuries.

51. At all times relevant, all named Defendants had a community of interest in the objects or purposes accomplished by the joint venture as each of the Defendants receive

remuneration, compensation, insurance, indemnification, or protection from insurance, tax and other financial liabilities in connection with their acts described in this complaint.

52. At all times relevant, all Defendants jointly controlled or had the right to control the operation and management of the Golden Pond ALF.

53. At all times relevant, all of the Defendants owned, managed, operated and/or controlled the Golden Pond ALF directly or as agents of one another.

54. All of the Defendants as well as their agents, associates, principals and owners, each had the right and authority to bind the other in the ALF business at hand as described in this complaint.

55. While engaged in the conduct alleged in this complaint, each Defendant acted with the express or implied knowledge, consent, authorization, approval and/or ratification of the other Defendants.

56. All of the Defendants as well as their agents, associates, principals and owners, have the right to share in the profits and the duty to share in any losses sustained by the joint venture.

## STATEMENT OF FACTS AND LAW

57. Plaintiff Whitaker has obvious and apparent physical impairments including paraplegia which substantially limit her mobility.

58. As a result of her physical impairments, Plaintiff Whitaker uses a wheelchair.

59. Plaintiff Whitaker's physical impairments constitute disabilities as that term is defined by the Fair Housing Act.

60. At all times relevant to this complaint, Plaintiff Whitaker could not walk, spontaneously move her legs, or bear weight on her legs.

61. At all times relevant to this action, all of the Defendants had actual knowledge of Plaintiff Whitaker's obvious and apparent physical disabilities including her inability to walk or bear weight on her legs.

62. From 2019 until September 2022, Plaintiff Whitaker lived at the Golden Pond ALF and the Golden Pond ALF was her "dwelling," as that term is defined by the federal Fair Housing Amendments Act. 42 U.S.C. § 3602(b).

63. In September 2022, as the result of a hurricane, the Golden Pond ALF flooded, and all of the Golden Pond ALF residents at the time, including Plaintiff Whitaker, were relocated to another ALF located 80 miles from the Golden Pond ALF at 320 S. Lakewood Ave. in Brandon, Florida that is owned by Sabra Health Care Holdings III, LLC and is presently operated under the fictitious name "Compass Rose of Brandon[2]" as disclosed in the online records maintained by the Florida Secretary of State.

64. Due to the relocation to Compass Rose of Brandon, Plaintiff Whitaker has difficulty seeing her regular doctor, regular dentist, godsister, church, pastor, and her friend who acts as her power of attorney.

65. Plaintiff Whitaker is a devoutly religious woman and due to the relocation from the Golden Pond ALF to Compass Rose of Brandon, she has not been able to participate in her ministry for more than two years.

66. All ALFs operating in Florida are covered by and subject to the Assisted Living Facilities Act, Fla. Stat. §§ 429.01-429.55, and to Chapter 59A-36 of the Florida Administrative Code.

---

[2] The same ALF was previously operating under the fictitious names "Rosecastle at Delaney Creek" and "Rosecastle of Brandon."

67. In order to be admitted to a Florida ALF, an individual must be able to "perform the activities of daily living, with supervision or assistance if necessary" and "transfer, with [the] assistance of [more than one person if] necessary." Fla. Admin. R. 59A-36.006(1)(a).

68. A person's suitability for admission to an ALF in Florida is determined, in part, through a "health assessment" which includes a face-to-face medical examination, addresses the physical status of the person and their functional limitations, includes an evaluation of whether the person will need assistance with their activities of daily living and a statement of the examining health care practitioner made on the day of the examination that, in the opinion of the examining health care practitioner, that the person's needs can be met in an ALF. Fla. Admin. R. 59A-36.006(2).

69. A person is qualified to live in an ALF in Florida if they require "assistance with transfer" which means providing "verbal and physical cuing or physical assistance or both while the resident moves between bed and a standing position or between bed and chair or wheelchair." Code R 59A-36.002.

70. The term "assistance with transfer" specifically excludes persons requiring "total physical assistance with transfer." Fla. Admin. Code R. 59A-36.002.

71. Nothing in Florida law or in the Florida administrative code requires that an ALF resident be able to "bear weight" on their legs.

72. At all times relevant, Plaintiff Whitaker uses a transfer board to transfer from her wheelchair to the toilet, tub, etc.

73. At all times relevant, Plaintiff Whitaker was able to and did either transfer independently or, if transfer assistance was necessary, did assist with transfers between her bed and

wheelchair and vice versa and she does not require "total physical assistance" with these transfers.

74. On August 15, 2022, Plaintiff Whitaker's physician conducted a "Neurological Re-Evaluation" and mailed her a letter prescribing a "medical recliner" for her to use. A true and correct copy of said letter is attached as Exhibit A.

75. In his, August 15, 2022 Neurological Re-Evaluation letter, Plaintiff Whitaker's physician states that Plaintiff Whitaker has paraplegia and has no spontaneous movement in her lower extremities.

76. Plaintiff Whitaker's physician also sent a copy of his August 15, 2022 letter to "Dr. Khan" at the Golden Pond ALF address.

77. Upon receipt of the Neurological Re-Evaluation, employees of the Golden Pond ALF, acting as agents and on behalf of all named Defendants, visited Plaintiff Whitaker's room at the Golden Pond ALF and asked her to stand up and bear to her own weight without assistance.

78. It was clear at the time that Plaintiff Whitaker's known, obvious and apparent disabilities, which existed prior to her admission and during her entire residency at the Golden Pond ALF, that she was not able to stand and was not able to bear her own weight without assistance.

79. Less than 30 days after Plaintiff Whitaker's physician sent a copy of Plaintiff's Neurological Re-Evaluation to the Golden Pond ALF, on September 9, 2022, Defendants, acting through their mutual agent David Hopkins, then executive director of the Golden Pond ALF, issued and delivered to Plaintiff Whitaker a 45-day notice terminating her residency at the Golden Pond ALF (Termination Notice) pursuant to Section 429.28(k)

Florida Statutes. A true and correct copy of the said Termination Notice is attached as Exhibit B.

80. The September 9, 2022 Termination Notice issued by Defendants to Plaintiff Whitaker states in pertinent part:

> *"I am writing regarding your care. You require a higher level of care than can be provided at Golden Pond.*
>
> *Upon physician documentation you are unable to bear weight on your lower extremities, which is a requirement for Assisted Living in the State of Florida. This letter will serve as forty-five-day notice to make other long-term care arrangements for yourself. You will need to be moved out of your room no later than October 25, 2022."*

81. In response an objecting to Defendants' September 9, 2022 termination notice, Plaintiff's counsel sent a letter to executive director Hopkins on October 11, 2022, notifying Defendants that 1) there is no Florida law that requires that an ALF resident be able to bear weight on their lower extremities, and 2) that the termination of Plaintiff Whitaker's residency was discriminatory and violated the federal Fair Housing Amendments Act because the notice a) contains discriminatory and threatening statements, and b) reflects the application and use by Defendants of discriminatory terms and conditions due to disability concerning Plaintiff Whitaker's residency. A true and correct copy of said letter is attached hereto as Exhibit C.

82. On November 15, 2022, Defendants, through their agent, executive director Hopkins, sent Plaintiff Whitaker a letter advising that Defendants had revoked the Termination Notice (Revocation Letter). A true and correct copy of said letter is attached hereto as Exhibit D.

83. The Revocation Letter, like the Termination Letter states the Defendants' discriminatory policy and practice with respect to persons with physical disabilities. To wit,

> *"Facilities such as Golden Pond…are not licensed to provide total physical assistance with resident transfers. Such facilities can only assist with resident transfers when a resident is able to stand with assistance, pivot, and bear their own weight. For as long as you are willing and able to perform these tasks, our facilities can provide sufficient care."*

84. On December 14, 2022, Plaintiff Whitaker filed an administrative complaint with the United States Department of Housing and Urban Development (HUD) concerning Defendants' housing discrimination against her on account of her disabilities. This administrative complaint was transferred by HUD to the Florida Commission on Human Relations.

85. After Plaintiff Whitaker was relocated to Compass Rose ALF, she learned that Defendant PHASE I OPCO had constructed and was offering for rent, apartment units in a new community doing business under the fictitious name "The Crossings of Golden Pond" located near the flooded Golden Pond ALF property that Plaintiff Whitaker resided in from 2019 until 2022.

86. Plaintiff Whitaker was eager to move back to her old neighborhood to be near her doctors, and church and so, on February 1, 2024, she sent an email to Lindsay Collins, executive director of Defendant OPCO's d/b/a "Golden Pond Communities," and requested "to learn more about the Golden Pond Independent Living Units newly built at 402 Lakeview Road." A true and correct copy of said letter is attached hereto as Exhibit E.

87. Executive Director Collins, acting as agent of and at the direction of Defendants refused to provide Plaintiff Whitaker with the information that she had requested about rental opportunities, stating in an emailed response to Plaintiff Whitaker, without further explanation that: "due to the ongoing legal claim that you have with our Community, I cannot speak to you about any accommodations at our Golden Pond Communities." *See* Exhibit E.

88. Executive Director Collins' email also advised Plaintiff Whitaker that she would have to make any such request for information about available dwelling units through her attorney.

89. By virtue of their joint venture, Defendants have the right and authority to bind each other with reference to the subject matter of their joint venture and Defendants jointly committed the acts and omissions complained of in this complaint with each acting on their own behalf and as the agent of the other.

90. As a result of the above-described acts and conduct, Plaintiff Whitaker's housing was made unavailable, she was subject to discriminatory terms and conditions, was subject to a discriminatory statement, and was subject to unlawful interference, coercion and intimidated on all account of having exercised her right to file a fair housing complaint with HUD.

91. All administrative prerequisites, if any, have been met for each claim brought in this Complaint, and each such claim is timely brought.

## COUNT 1 – ALL DEFENDANTS
## VIOLATION OF THE FEDERAL FAIR HOUSING ACT
## (42 U.S.C. 3604(f)(1),(2))

92. Plaintiff Whitaker realleges and incorporates by reference Paragraphs 5 through 91, inclusive, of this Complaint as if fully set forth herein.

93. The FHA defines disability as follows: "1) a physical or mental impairment which substantially limits one or more … major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment...". 42 U.S.C. § 3602(h).

94. Defendants knew, at all times relevant to this action, that Plaintiff Whitaker had physical disabilities, required a mobility device, and could not bear weight on her legs

95.  The FHA makes it unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any renter because of disability. 42 U.S.C. § 3604(f)(1).

96. Pursuant to the FHA it is also "unlawful to discriminate against any person in the terms, conditions, or privileges of [] rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of" disability. 42 U.S.C.A. § 3604(f)(2).

97. Defendants unlawfully discriminated against Plaintiff Whitaker in the rental of a dwelling by taking action to make Plaintiff Whitaker's dwelling unavailable on account of her disability by attempting and threatening to terminate Plaintiff Whitaker's tenancy through the Termination Notice sent to her by the Golden Pond ALF.

98. Defendants, working jointly and severally, but always on behalf of all Defendants, imposed discriminatory terms and conditions on Plaintiff Whitaker through application of their housing policy, to refuse housing to persons whose disabilities prevent them from

"bear[ing] their own weight," as stated in Defendants' Termination and Revocation Notices.

99. Plaintiff Whitaker sustained injury and has been harmed by Defendants' termination of her residency agreement at the Golden Pond ALF and by the application of their discriminatory policy to refuse housing to persons such as Plaintiff Whitaker who cannot bear weight on their legs.

100. As a result of Defendants' illegal conduct and discriminatory practices, Plaintiff Whitaker

is an aggrieved person in that she has been deprived of her right to equal housing opportunities, has suffered discrimination on account of her disabilities and has suffered, and continues to suffer, irreparable loss and injury including, but not limited to, emotional distress, anxiety, fear, shame and humiliation.

101. Plaintiff Whitaker has had to retain undersigned counsel to deal with the Defendants' discriminatory and threatening notice of termination of her tenancy and to assist with the prosecution of her rights in this matter.

102. Defendants' actions described in this complaint were undertaken by Defendants with reckless and wanton disregard for Plaintiff Whitaker's civil rights.

103. Defendants intentionally caused Plaintiff Whitaker to suffer harm by misrepresenting her rights under Florida law and by threatening her with termination of her ALF residency for which Plaintiff Whitaker is entitled to recover damages against the Defendants, jointly and severally.

104. Plaintiff Whitaker further requests and seeks a permanently injunction against Defendants requiring them to cease discriminating against Plaintiff Whitaker, change all

unlawful housing policies including the policy identified in the Termination Notice and to

require Defendants to provide her with information about suitable housing opportunities

available at Crossings at Golden Pond and any other housing they own or operate and

about which she inquires.

105. Pursuant to Section 3613(c)(1) of the Fair Housing Act, Plaintiff is entitled to a

judgment awarding her actual and punitive damages against the Defendants, jointly and

severally, and injunctive and declaratory relief.

106. Pursuant to Section 3613(c)(2) of the Fair Housing Act, Plaintiff is entitled to a

judgment against Defendants for an amount that pays her costs and reasonable

attorney's fees.


**COUNT 2 – ALL DEFENDANTS**
**VIOLATION OF THE FEDERAL FAIR HOUSING ACT**
**(42 U.S.C. 3604(c))**

107. Plaintiff Whitaker realleges and incorporates by reference Paragraphs 5 through 91,

inclusive, of this Complaint as if fully set forth herein.

108. The FHA defines disability as a physical or mental impairment which substantially

limits one or more major life activities. 42 U.S.C. § 3602(h).

109. The FHA makes it unlawful to "make, print, or publish, or cause to be made, printed, or

published, any notice [or] statement, [] with respect to the sale or rental of a dwelling that

indicates any preference, limitation, or discrimination based on [] handicap [] or an

intention to make any such preference, limitation, or discrimination." 42 U.S.C. §

3604(c).

110. Defendants' Termination Notice and Revocation Notice, on their face, indicate a "preference, limitation, or discrimination based on . . . disability" in direct violation of 42 U.S.C. § 3604(c).

111. Plaintiff Whitaker is an aggrieved person within the meaning of 42 U.S.C. §§ 3602(i) and 3614(d)(1)(B) as a result of being victimized by Defendants' pervasive and continuing discriminatory conduct and business practices challenged in this complaint.

112. Defendants' actions described in this complaint were undertaken by Defendants with reckless and wanton disregard for Plaintiff Whitaker's civil rights and are the proximate cause of Plaintiff Whitaker's damages for which Plaintiff Whitaker is entitled to from the Defendants, jointly and severally.

113. As a direct and proximate result of Defendants' acts, omissions, and violations of the Fair Housing Act that are the subject of this complaint, Plaintiff Whitaker has suffered damages including, but not limited to, emotional distress, anxiety, fear, shame and humiliation for which she is entitled to recover through an award of compensatory and punitive damages against the Defendants, jointly and severally.

114. Defendants' actions described above were undertaken with reckless and wanton disregard for Plaintiff Whitaker's civil rights, causing her to suffer emotional and psychological distress for which she is also entitled to recover through an award of compensatory and punitive damages against the Defendants, jointly and severally.

115. Pursuant to Section 3613(c)(1) of the Fair Housing Act, Plaintiff is entitled to a judgment awarding her actual and punitive damages against the Defendants, jointly and severally, and injunctive and declaratory relief.

116. Pursuant to Section 3613(c)(2) of the Fair Housing Act, Plaintiff is entitled to a

judgment against Defendants for an amount that pays her costs and reasonable attorney's fees.

## COUNT 3 – ALL DEFENDANTS
## VIOLATION OF THE FEDERAL FAIR HOUSING ACT
## (42 U.S.C. 3617)

117. Plaintiff Whitaker realleges and incorporate by reference Paragraphs 5 through 91, inclusive, of this Complaint as if fully set forth herein.

118. At all times relevant, Plaintiff Whitaker was a person with a disability as that term is defined in the FHA.

119. The anti-retaliation provision makes clear that to coerce, threaten, or intimidate a person, or to interfere with a person in their exercise, enjoyment, or their helping others exercise their rights, constitutes a separate and distinct violation of the Fair Housing Act. Retaliatory conduct is unlawful in and of itself.

120. Regardless of the filing of a complaint by a resident, as Plaintiff Whitaker's housing provider, Defendants were required by the statute to continue normal communications (about maintenance, rent payments, changes in rules, vacancies, etc.) with her during her residency at the Golden Pond ALF.

121. Defendants took aim at Plaintiff Whitaker because she filed an administrative complaint with HUD challenging Defendants' housing discrimination against her.

122. Defendants intimidated Plaintiff Whitaker and interfered with her right to exercise and enjoyment of her fair housing rights, including her rights under 42 U.S.C. § 3604(f)(1) and (f)(2), in direct violation of the Fair Housing Act, 42 U.S.C. § 3617 (the anti-retaliation clause).

123. Defendants retaliated against Plaintiff Whitaker in direct response to her filing of the administrative complaint for housing discrimination with HUD by refusing her request

to provide her with the information regarding available rental opportunities.

124. Defendants' retaliatory conduct was specifically directed against Plaintiff Whitaker because she filed a complaint to redress their discrimination against her.

125. As a proximate result of Defendants' retaliatory acts, Plaintiff Whitaker has and continues to be unlawfully denied the ability to rent such dwelling units.

126. Defendants' refusal to provide information about housing opportunities closer to Plaintiff Whitaker's old housing that she had to vacate due to flooding, was an attempt by Defendants to interfere with Plaintiffs' right to live free from housing discrimination.

127. By this action, Plaintiff Whitaker seeks redress for Defendants' discrimination and retaliation against her designed and intended by Defendants to intimidate, coerce and threaten Plaintiff on account of her having exercised her right to fair housing.

128. These retaliatory acts by Defendants directly interfered with Plaintiff's Whitaker's ability to enjoy exercise her nondiscrimination rights under the FHA and Defendants' conduct caused Plaintiff to suffer further and additional damage.

129. As a direct and proximate result of the Defendants' discriminatory and retaliatory acts, omissions, and violations of the Fair Housing Act, Plaintiff Whitaker has suffered and continues to suffer damages.

130. Pursuant to Section 3613(c)(1) of the Fair Housing Act, Plaintiff is entitled to a judgment against Defendants awarding her a monetary judgment against Defendants, jointly and severally, for her actual and punitive damages.

131. Plaintiff Whitaker is also entitled to injunctive and declaratory relief against Defendants' continuing discriminatory and retaliatory conduct.

132. Pursuant to Section 3613(c)(2) of the Fair Housing Act, Plaintiff is entitled to a judgment against Defendants, jointly and severally, for an amount that pays her costs and reasonable attorney's fees.

### COUNT 4 – ALL DEFENDANTS
### VIOLATION OF THE REHABILITATION ACT
### 29 U.S.C. § 794

133. Plaintiff Whitaker repeats paragraphs 5 through 91 above as if fully set forth herein.

134. Section 504 of the Rehabilitation Act of 1973 provides: "No otherwise qualified individual with a disability...shall, solely by reason of her…disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

135. A program or activity receiving federal financial assistance is prohibited from denying a qualified handicapped person "the opportunity accorded others to participate in the program" and "an equal opportunity to achieve the same benefits that others achieve in the program." 28 C.F.R. § 42.503(b)(i) and (ii).

136. In order to establish that Defendant violated Section 504 of the Rehabilitation Act (Rehab Act), Plaintiff Whitaker shows that she is an individual with a disability, she is otherwise qualified to receive the benefit of the housing she rented from the Golden Pond ALF, she was denied the benefits of her housing at the Golden Pond ALF solely by reason of her disabilities, and that the Golden Pond ALF is a housing program that receives federal financial assistance.

137. Plaintiff Whitaker is a person with a disability as that term is defined in the Rehab Act, 24 C.F.R. § 8.3, and was, at all times relevant, qualified to receive the benefit of the housing she rented from the Golden Pond ALF.

138.  Defendants accept federal Medicaid funds to operate the Golden Pond ALF and are thus recipients of federal funds subject to the requirements of the Rehab Act.

139.  Defendants violated Plaintiff's rights under Section 504, 29 U.S.C. § 794(a) and Defendants are engaging in illegal discriminatory housing practices by: a) applying a discriminatory housing policy which denies Plaintiff Whitaker, solely on account of her disability, the opportunity accorded to others who are not disabled to participate in housing at the Golden Pond ALF; and b) refusing to provide information about housing opportunities, including information about rentals at the Crossings at Golden Pond, based solely on her complaints of disability discrimination..

140.  Through their actions described in this complaint, Defendants subjected Plaintiff Whitaker to discrimination and excluded her from equal participation in and denied her the benefits of a housing program that receives federal financial assistance on the basis of her disabilities in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq., and Housing and Urban Development regulations, 24 C.F.R. pt. 8.

141.  The discriminatory conduct of Defendants as described in this complaint has caused injury to Plaintiff Whitaker.

142.  The discriminatory actions of Defendants described in the complaint were intentional, willful, reckless, deliberately indifferent to, and taken with disregard for Plaintiff Whitaker's rights, as an individual with disabilities.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE,** Plaintiff Whitaker respectfully requests that the Court grant her the following relief:

1. Enter a declaratory judgment finding that the foregoing actions of Defendants violated 42 U.S.C. § 3604(f)(1), (f)(2), (c) and 42 U.S.C. § 3617;

2. Enter a permanent injunction:

   a. enjoining Defendants and their directors, officers, agents, and employees from discriminating on the basis of disability;

   b. directing Defendants to provide Plaintiff Whitaker with information about available housing units at The Crossings at Golden Pond and any other housing owned or operated by any of the Defendants and about which Plaintiff Whitaker inquires;

   c. directing Defendants and their directors, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future; and

   d. directing Defendants to post signs at all of their residential rental properties alerting residents and potential residents to their rights, under the Fair Housing Act;

3. Award compensatory damages to Plaintiff Whitaker in an amount to be determined by the jury that would fully compensate Plaintiff for injuries caused by the conduct of Defendants as alleged herein;

4. Award punitive damages to Plaintiff Whitaker in an amount to be determined by the jury that would punish Defendants for the willful, malicious, and reckless conduct alleged herein and that would effectively deter similar conduct in the future;

5. Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 3613(c)(2); and

6. Award such additional or alternative relief as may be just, proper, and equitable.

## **JURY DEMAND**

Plaintiff Whitaker demands a jury trial on all issues which can be heard by jury.

Dated: _November 15, 2024_____

                                                RESPECTFULLY SUBMITTED,

                                                /s/ Katherine Hanson
                                                Katherine Hanson, Esq.
                                                Disability Rights Florida
                                                Director
                                                Advocacy, Education and Outreach
                                                Florida Bar No.: 0071933
                                                2473 Care Dr
                                                Suite 200
                                                Tallahassee, FL 32308
                                                800-342-0823 ext 9713
                                                TDD 800-346-4127
                                                Fax 850-488-8640
                                                katherineh@disabilityrightsflorida.org

                                                /s/ Neil L Henrichsen
                                                Neil L Henrichsen
                                                Florida Bar No.: 111503
                                                Henrichsen Law Group, PLLC
                                                301 West Bay Street, Suite 1400
                                                Jacksonville, FL 32202
                                                904-381-8183
                                                Fax 904-212-2800
                                                nhenrichsen@hslawyers.com
                                                service@hslawyers.com


                                    By:    /s/Katherine Hanson, Esq.
                                           Fla. Bar No.: 0071933